UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Protégé Biomedical, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Z-Medica, LLC,<br><br>　　　　　Defendant. | Case No. 18-cv-3227 (JRT/HB)<br><br>**ORDER**<br><br>**FILED UNDER SEAL** |

HILDY BOWBEER, United States Magistrate Judge

　　This action arises out of patent and trade secret disputes between Protégé Biomedical, LLC, and Z-Medica, LLC, who both manufacture hemostatic, or blood-clotting, products using aluminum silicates. Protégé alleges that Z-Medica misappropriated Protégé's trade secrets, *inter alia,* by using them in a continuation patent application. Z-Medica has asserted a counterclaim alleging that Protégé's products infringe its U.S. Patent No. 10,086,106 B2 (the '106 patent). Protégé brings the instant motion seeking to compel Z-Medica to (1) produce documents and communications pertaining to the preparation and filing of the continuation patent application that Z-Medica withheld on the basis of attorney-client privilege, on the ground that they fall under the crime-fraud exception to the privilege; and (2) fully answer an interrogatory seeking the factual bases for statements made in a letter sent to Protégé by Z-Medica's counsel on October 10, 2018, warning Protégé that Protégé's products likely infringed one or more of Z-Medica's patents. For the reasons set forth below, the motion is denied.

I.   **Motion to Compel Production of Privileged Communications**

   A.   **Background**

In an effort to sell the company, Protégé engaged in acquisition discussions with Z-Medica in early 2018. In connection with those discussions, a telephone conversation that included representatives from both Protégé and Z-Medica was held on February 9, 2018. Protégé alleges that during that conversation it disclosed trade secrets to Z-Medica. (Dosdall Decl. Ex. A (Wuollett Dep. Tr.) [Doc. No. 278 at 5].) Later that same day, according to Z-Medica's privilege log, Dina Dubey, Z-Medica's Chief Operating Officer and a participant on the phone call with Protégé, exchanged three emails with Z-Medica's outside counsel. (Dubey Decl. Ex. A (Def. Priv. Log) Nos. PRIV-ZMED000006, 14–15 [Doc. No. 257-1].) The February 9, 2018 emails are described on Z-Medica's privilege log as "Email requesting legal advice regarding Protégé's patents." (*Id.*) Z-Medica withheld those emails, along with other communications with its outside patent counsel or otherwise conveying legal advice, on grounds of attorney-client privilege.

Two months after the phone call with Protégé, Z-Medica filed a continuation patent application for its "Clay-Based Hemostatic Agents"—what became the '106 patent. (Nauen Decl. Ex. 27 [Doc. No. 259-1 at 165].) In August, Dubey sent an email to Z-Medica's President to let him know the continuation patent had been approved. (Conley Ex. H [Doc. No. 111 at 2].) In that email she referred to Z-Medica's efforts to "fast track" the application in order to "block" rival products, and remarked "I know at least [a] couple companies who are going to be upset about this patent issuance." (*Id.*)

Based on this sequence of events, Protégé infers that the emails Dubey exchanged with counsel on February 9, 2018, initiated an effort by Z-Medica to "block" Protégé's product by leveraging Protégé's trade secret information learned during the phone call earlier that day.  Specifically, Protégé posits that Dubey conveyed the trade secret(s) she allegedly learned during that call to Z-Medica's patent counsel "for the purpose of seeking advice on filing a continuation application that would include *all* the confidential information she learned during the M&A phone call."  (Pl.'s Mem. at 6 [Doc No. 240] (emphasis in original).)  Protégé believes Dubey's emails to counsel will contain evidence of Z-Medica's disclosure and use of Protégé's misappropriated trade secrets.  Because the Defend Trade Secrets Act, 18 U.S.C. § 1832(a), makes misappropriation of a trade secret a crime, Protégé contends that the crime-fraud exception to the attorney-client privilege applies to Z-Medica's communications with its counsel for the alleged purpose of using Protégé's trade secrets in this fashion.  It seeks to compel production of 81 documents.[1]  (*See id.* at 14–15.)

**B.    Discussion**

The attorney-client privilege "does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going

---

[1]  Of the 81 requested documents, the Court understands 19 are no longer in dispute because they have been or will be produced, or they contain no content.  (Dubey Decl. ¶¶ 5–8 [Doc. No. 257].)  Of the remaining 62 documents, only 42 pre-date October 2, 2018, the date Z-Medica's continuation patent was issued, which is presumably the only period relevant to whether Z-Medica misappropriated Protégé's trade secrets to use in preparing or prosecuting the continuation application.  (Dubey Decl. Ex. A (Def. Priv. Log) Nos. PRIV-ZMED000071–90 [Doc. No. 257-1].)

3

or future wrongdoing." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001). Accordingly, the privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989). Importantly, the legal advice must have been obtained to further the fraudulent activity; it is not enough that a communication merely evidences the fraud. *See In re BankAmerica*, 270 F.3d at 642.

In order to show that the crime-fraud exception applies, the proponent of the exception must make a prima facie showing that the party objecting to production of the privileged communications was (1) engaged in criminal or fraudulent conduct, and (2) sought legal advice in furtherance of that criminal or fraudulent conduct. *Triple Five of Minnesota, Inc. v. Simon*, 213 F.R.D. 324, 327 (D. Minn. 2002). While courts disagree about what "quantum of proof" is required to trigger the crime-fraud exception, it is clear that the moving party must present some evidence that a particular communication was made in furtherance of an alleged crime. *BankAmerica,* 270 F.3d at 644.

Protégé argues that Z-Medica's privilege log reveals that Z-Medica's team was engaged in the theft of trade secrets, a crime under 18 U.S.C. § 1832(a). Protégé has asserted a claim for *civil* misappropriation of trade secrets under 18 U.S.C. § 1836, and argues the elements of a charge of *criminal* misappropriation of trade secrets under 18 U.S.C. § 1832(a) are the same. Protégé reasons that since the Honorable John R. Tunheim, United States Chief District Judge, denied Z-Medica's Motion to Dismiss with regard to Protégé's claim under the Defend Trade Secrets Act (*see* Mem. Opinion & Ord. at 19–20 [Doc. No. 170] (noting, however, that the secrets had "yet to be identified with

specificity")), Protégé's complaint therefore adequately pleads sufficient facts to support a claim that Z-Medica engaged in criminal activity.[2]

But even assuming *arguendo* that Protégé is correct that a civil complaint that adequately pleads misappropriation of trade secrets suffices to raise a criminal allegation to the same effect, Protégé would still be obligated to support its claim with some evidence in order to trigger the possible application of the crime-fraud exception. Surviving a motion to dismiss only endorses the sufficiency of Protégé's pleadings; it is not prima facie evidence of anything. Protégé cannot "satisfy this threshold merely by alleging that a fraud [or crime] occurred and asserting that disclosure of any privileged communications may help prove the fraud [or crime]." *BankAmerica*, 270 F.3d at 642. Thus, Protégé's insistence that the Court has found its pleading adequate to state a claim under the Defend Trade Secrets Act, may be *necessary* to its motion, but is not *sufficient* to make the two-pronged showing required to trigger the crime-fraud exception.

Turning to the first prong, Protégé must make a prima facie showing that Z-Medica engaged in criminal or fraudulent conduct by misappropriating Protégé's trade secret for use in the continuation patent application. But Protégé only *asserts* in its moving papers that unnamed trade secret(s) were conveyed to Dubey on the call and that

---

[2] Protégé has alleged that a second basis for the crime-fraud exception is Z-Medica's "improper business misconduct." (Pl.'s Mem. at 8.) Protégé argues that the "modern view" of the crime-fraud exception is broad, such that "instances of business conduct that reek of indecency" is enough to trigger it. (*Id.* at 4.) The main source for this position seems to be *Koch v. Specialized Care Serv., Inc.*, wherein a federal court in Maryland made an "*Erie* guess" as to Maryland state law on the subject. 437 F. Supp. 2d 362, 376 (D. Md. 2005). The Court sees no reason to apply that rationale to this matter.

5

Dubey and Z-Medica's counsel then used that information in their continuation application. It does not identify the purported trade secret(s), it does not make a showing that they were actually secret, and it does not point to where they are used or disclosed in Z-Medica's continuation application.

Nor does Protégé adduce evidence to support the second prong, that the attorney-client communications it seeks to discover were in furtherance of a criminal act. It ventures some inferences about the content of the email exchanges between Dubey and Z-Medica's counsel, based entirely on their timing (shortly after the phone call with Protégé), their description in Z-Medica's privilege log ("Email requesting legal advice regarding Protégé's patents"), the filing of the continuation application two months later, and the email Dubey sent to her boss after the application was approved, in which she referred to Z-Medica's work to "fast track" the application in order to "block" rival products. (Conley Ex. H [Doc. No. 111 at 2].) But Protégé's inference is far from the only plausible one. For example, it would be reasonable for a company that was considering acquiring another company, after concluding an informational call, to seek advice from its patent counsel regarding the scope and value of the potential acquisition's patent holdings. More importantly, it is not enough for Protégé merely to speculate that there is something nefarious in the privileged emails. *See Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) ("Other than offering speculation based on a sampling of the description of documents listed in the privilege log, Rabushka has offered no evidence. . . ."); *see also Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 305604, at *10 (M.D. La. Jan. 5, 2018); *Ross v. UKI Ltd.*,

6

No. 02 Civ. 9297 (WHP) JCF, 2004 WL 67221, at *6 (S.D.N.Y. Jan. 15, 2004); *Bria v. United States*, No. 3:01MC(CFD), 2002 WL 663862, at *4 (D. Conn. Mar. 26, 2002). Protégé argues the Court should infer from the fact that Dubey did not submit a declaration explaining the real reason for the February 9, 2018, emails, but it is not Dubey's or Z-Medica's obligation to counter Protégé's inferences when Protégé offered no evidence to support them in the first instance.

Likewise, Dubey's August email celebrating Z-Medica's work to "fast track" the continuation application in order to "block" competitors' products does not give rise to an inference of criminal conduct. (Conley Ex. H [Doc. No. 111 at 2].) "[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market." *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988); *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235–36 (Fed. Cir. 1985) ("Conduct such as . . . keeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer. . . . The world of competition is full of 'fair fights.'")

It is Protégé's burden to show prima facie evidence of a crime or fraud (*Triple Five of Minnesota, Inc.*, 213 F.R.D. at 327), yet the only evidence in the record on the subject is from Dubey herself, who states unequivocally that she did not misappropriate trade secrets (Dubey Decl. ¶ 3 [Doc. No. 257]). In short, Protégé has failed to support its motion with a prima facie showing that any of the withheld communications bear any

relationship to misappropriation of trade secrets, or any other crime or fraud.[3] The Court therefore concludes that Protégé has not met its burden of establishing that the crime-fraud exception applies here.

### C. Z-Medica's Request for Sanctions

Z-Medica argues that the Court should not only deny Protégé's motion to compel, it should award sanctions against Protégé for having brought the motion in the first instance. It specifically requests that the Court award fees and other expenses, strike Protégé's motion from the docket, admonish counsel, and publicly state that it finds no evidence of criminal activity on the part of either Z-Medica or Dina Dubey.

The Court agrees that an award of Z-Medica's reasonable attorneys' fees and expenses associated with responding to the motion is appropriate. Under Federal Rule of Civil Procedure 37(a)(5)(B), in the event that a motion is unsuccessful, the Court is obligated to require the moving party to pay the "reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was substantially justified or other circumstances make the award of expenses unjust. The sanctions

---

[3] Z-Medica asserted a counterclaim against Protégé for patent infringement [Doc. No. 182] and Protégé responded in part by asserting as an affirmative defense that the patent was unenforceable due to Z-Medica's unclean hands [Doc. No. 186]. Protégé now seems to argue that, apart from the crime-fraud exception, Z-Medica's privileged communications are discoverable solely on the grounds that they would be useful to help Protege make out its unclean hands defense. (Pl.'s Mem. at 9–12.) Protégé bases this argument primarily on *Gilead Sciences, Inc. v. Merck & Co, Inc.*, in which the Federal Circuit affirmed a lower court's determination that a patent was invalid under the unclean hands doctrine. 888 F.3d 1231 (Fed. Cir. 2018). *Gilead* involved a merits determination; it says nothing to suggest that the doctrine of unclean hands can be used to defeat an otherwise valid assertion of privilege. It therefore does not support Protégé's argument that it is entitled to Z-Medica's protected communications with its attorneys.

8

provision of Rule 37(a)(5) was intended "to reduce the burden on the courts" by deterring parties from "making unjustified motions for discovery. . . ." 8B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2288 at 514 (3rd ed. 2010). Protégé's crime-fraud motion was unjustified. Protégé failed to make even a colorable showing that Z-Medica or Dina Dubey had engaged in criminal or fraudulent behavior, let alone engaged its attorneys in furtherance of that conduct. The Court also does not see any other circumstances that would make the award of expenses unjust. Accordingly, the Court concludes that an award of reasonable expenses is appropriate.

But the Court declines to order the further measures Z-Medica seeks. The analysis above reflects the Court's reasoning and should dispel any lingering questions as to the merits of the motion. While the Court will file this Order initially under seal in order to give the parties an opportunity to identify any truly confidential information referenced herein that should be redacted from the publicly filed version of this Order, the vast majority of the Order, including the Court's ultimate resolution, will be a matter of public record. The Court does not believe that any further steps are necessary.

## II.     Protégé's Motion to Compel a Further Response to Interrogatory No. 1

Protégé also seeks to compel a more fulsome response to its first interrogatory:

INTERROGATORY NO. 1: Regarding the "October 10, 2018 letter," describe the bases, including analyses generated or relied on by You, that support the statements: "We believe the IHM bandage, if made, used, sold, offered for sale, or imported, would infringe at least claims 1 and 11 of Z-Medica's U.S. Patent No. 10,086,106" and "[W]e believe it is likely that you can confirm that it is also covered by other Z-Medica patents, including U.S. Patent Nos. 8,257,732; 8,784,876; 8,383,148; 9,078,782; and 9,821,084."

9

As previously noted, the "October 10, 2018 letter" was sent by counsel on behalf of Z-Medica to warn Protégé that its products likely infringed certain Z-Medica patents. In response to the interrogatory, Z-Medica stated that all "bases" and "analyses" underlying the letter were developed by an attorney and were therefore protected:

> Z-Medica has conducted a reasonable investigation and search and is unaware of any responsive "analyses" by any Z-Medica employees (or its agents who are not attorneys). The "bases" of the October 10, 2018 letter, sent by Z-Medica's counsel, were developed by attorneys. Z-Medica therefore objects that Interrogatory No. 1 seeks information protected by the work-product doctrine or the attorney-client privilege, or both. Additionally, Z-Medica has already provided its infringement contentions pursuant to the governing pretrial scheduling order. As a result, Protégé has already been provided with the bases for Z-Medica's infringement contentions that are relevant to this case.

(Balthazor Decl. Ex. E at 1 [Doc. No. 242-3].) Protégé argues it does not seek communications with counsel or attorney work product, but maintains that the "underlying facts supporting Z-Medica's conclusions" are discoverable.

It is undeniably true that facts communicated to an attorney are not shielded by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts. . . ."). Moreover, courts in this District have held that discovery may be permitted into the factual bases for allegations of infringement. *See, e.g., Arctic Cat, Inc. v. Bombardier Recreational Prod., Inc.*, No. 12-CV-2692 (JRT/LIB), 2014 WL 12610146, at *6 (D. Minn. May 23, 2014) (permitting deposition concerning factual bases for infringement claims, which the court distinguishes from "legal conclusions, determination[s], or judgments, or privileged or otherwise protected information"); *but*

10

*see Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*, No. CV 10-4362 (JNE/JJG), 2012 WL 13028232, at *8 (D. Minn. Jan. 12, 2012) (concluding that work product objections were valid when interrogatory sought "all analyses, searches, or opinions relating to, inter alia, the patentability, validity, and infringement of any claims of the patent"). But the October 10, 2018, letter was sent by Z-Medica's counsel to Protégé, and although it was Z-Medica's Chief Operation Officer Dina Dubey who requested that counsel draft the letter, the attorneys who drafted it did so "without any substantive input from [Dubey] or . . . anyone else at Z-Medica." ((Dubey Decl. ¶ 13.) To the extent that the letter is premised on any "analyses" of potential infringement, those were developed entirely by Z-Medica's attorneys. (*Id.*) To the extent that, in the course of drafting the letter, the attorneys identified "bases" for the statements in the letter, those also reflect the mental impressions of the attorneys. Accordingly, the Court does not see how this interrogatory, framed in this fashion, can be answered without invading the work product of Z-Medica's counsel, any more than counsel in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) could answer questions asking for identification of documents regarding particular subject matter without revealing her mental impressions of what was or was not significant. *Id.* at 1328–29.

As Z-Medica points out, it already has served its infringement contentions with regard to the '106 patent in suit. Nothing precludes Protégé from seeking discovery into the factual bases for those contentions, but the Court concludes that the current interrogatory, which essentially asks what the attorney or attorneys who wrote the letter relied upon when they wrote it, necessarily invades the mental impressions of those

11

attorneys. Therefore, the Court upholds Z-Medica's work product objection and denies Protégé's motion to compel a further response.

### III. Protégé's Request for "Parity" on the Question of Functional Employees

Protégé's motion includes a brief final request that if the Court grants Z-Medica's separate motion to compel Protégé to produce communications between Protégé's counsel and certain independent contractors (which Protégé has characterized as "functional employees") on the ground that those communications are not privileged (*see* Z-Medica Mem. Supp. Mot. Compel. at 20 [Doc. No. 249]), then the Court should compel the same production from Z-Medica. (Pl.'s Mem. at 13.) Z-Medica represents that none of the communications listed on its privilege log involve independent contractors, so there is nothing to compel. (Def. Mem. at 39.) Furthermore, even if Z-Medica had withheld such communications, the analysis of whether the privilege was waived by including such individuals is a fact-intensive one; the Court's decision about whether privilege attached to Protégé's communications would not necessarily apply to Z-Medica's (if there were any in the first place). The Court denies this aspect of the motion as moot.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel Discovery [Doc. No. 238] is **DENIED**.

2. Defendant's request for sanctions is **GRANTED** as to the cost of Z-Medica's reasonable fees and expenses incurred in opposing the motion, but denied as to any further relief. **Within 14 days of the date of this Order**, Z-Medica shall file a declaration with supporting documentation, redacted for privilege and

work product purposes to the extent necessary, as to the fees and costs incurred to prepare, file, and argue its response to this motion.

3. This Order will be unsealed in its entirety on **March 31, 2020** unless the parties show good cause for specific redactions herein.  Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information, if any, referred to in this Order, and shall submit a joint letter on or before **March 27, 2020**, identifying with specificity what redactions they believe are required and the basis for those redactions.

Dated: March 17, 2020                     s/ *Hildy Bowbeer*
                                                     HILDY BOWBEER
                                                     United States Magistrate Judge